The opinion of the court was delivered by
Duncan, J.
There are two questions for the consideration of the court, — was there a trespass committed ? — was it a matter within the jurisdiction of a justice of the peace?
I do not suppose any one could -doubt of the unlawful entry of the defendant into the plaintiff’s dwelling-house, and continuing *418 there against his will, or, that this entry and continuance amounted to a trespass, unless the entry was justifiable and authorized by the law. I will suppose this special justification to have been pleaded; it would be then stated, “that the tenant of defendant was in arrear for rent; that he fraudulently and clandestinely carried off his goods, to prevent his landlord from distraining, and that within thirty days the defendant entered the dwelling-house'Of the plaintiff to make search for these goods so removed, doing no unnecessary damage to the plaintiff, which is the supposed trespass complained of.”
The evidence was, “ that the defendant took a constable with him to the dwelling-house of the plaintiff, to distrain English’s goods, which he said were there; that, after knocking at the door, they were desired to walk in ; they did so. Mr. Hobbs and Mr. English were in the house: the constable informed them what he had come for. Hobbs was not there: the women said, there were no goods of English’s there. Geiss insisted on the constable proceeding. The constable sat down to a table to head his inventory. Before he finished, Hobbs came in and said there were no goods of English’s there. The constable then stopped: Geiss got warm, and desired the constable to go on, — talked loud, — great confusion in the house and bustle, — children crying and neighbours gathering about the door, — one of the women closed the window shutter, — constable found there was nothing to be got and went away.”
The charge of the court excepted to was, “that the entry was lawful, and nothing was proved to have been done afterwards which rendered it unlawful. The law was with the defendant, and the verdict should be for him.” I thiqk in this the majority of the court erred, and that the entry into the plaintiff’s dwelling-house, and the subsequent conduct of the defendant in the house was most unwarrantable, and unauthorized by the provisions of any law giving even colour to it. Even if the door had been open, the defendant could not enter for this purpose. I do not mean to say, that one neighbour entering intothe house of another for a civil purpose is a trespasser; but it is in general true, that an action of trespass lies for going into the house of another, although the door be open; for every man’s house is his castle, and he is not obliged to keep the door shut. 5 Bac. Ab. 177. But if the owner has unlawfully gotten the goods of another into his house, and he goes in, (the door being open,) to take them away, this action does not lie, because the owner of the house was the first wrongdoer. Cro. Eliz. 246. 2 Roll. 56. 2 Lev. 1185. But if he enters, even on a strong suspicion, and has probable cause for that suspicion, still, if the goods are not there, he is a trespasser. This is a much stronger ease than following goods of the defendant to distrain them in another man’s house. These discretionary visits are forbidden by the law: the sanctity of a man’s dwelling-house is one of the just boasts of the provisions of the common law: it would be a vain boast jf *419 every landlord could enter it to search for his tenant’s goods. At no time even of the feudal system, when landlords exercised most tyrannical powers, could he do this. If the defendant’s* goods had been stolen, and he had just cause to suspect they were in the plaintiff’s house, he could not have justified; for even on a warrant to search for stolen goods, the informer must proceed with great caution. There must be an oath that the party has had his goods stolen, and has strong reason to believe they are concealed in such a place. If the goods are not found there, he is a trespasser. Our law holds even the unenclosed property of every one in such respect and so sacred, that no man can set his foot on his neighbour’s land, without his leave: if he does, he is a trespasser, though he does no damage at all. If he will tread on his neighbour’s ground, he must justify it by law. 2 Wils. 291. We may safely say, there is no law in this country to' justify the defendant in what he has done: if there was, it would destroy all the comforts of society. It is in vain to tell us he had the leave of the plaintiff’s wife, if she could grant such license to enter for such purpose: but she granted no-such license. On hearing the knock at the door, the woman said, walk in, — ignorant of the intention of the knocker, and that he was a landlord with a constable at his shoulder to search for concealed goods of his tenant. And if leave was given to enter, as one neighbour entering into the house of another, he has abused it and. is a trespasser ab initio; for the court will judge by the subsequent acts quo animo, and to what intent he entered. This was a trespass, and a trespass, I am hound to say, of no ordinary or trivial nature.
But still, this being an appeal from the judgment of a justice of the peace, if he had no jurisdiction the judgment would be proper, however erroneous the reasbns might be. It is the judgment that is to be affirmed or. reversed. The jurisdiction is conferred by the act of the 22d of March, 1814: “ In all actions of trover and conversion, and of actions of trespass brought.for injury done or committed on real or personal property, where the value of the property claimed, or the damage alleged to have been sustained shall not exceed one hundred dollars.” There is ingenuity in the objection to the jurisdiction, but it is quite too refined to apply to the construction of any act of assembly. The argument is, that unless there was something permanent in the injury, something on which referees could assess the damages by ocular demonstration or a view, the legislature did not mean to give the justices jurisdiction: that here the damages were merely ideal, the trespass such as passed away leaving no trace behind. There are many reasons why this should not be the construction: the injury certainly is within the letter of the act. If it be not so, then the justice would have no jurisdiction in case of the destruction of a personal chattel, or carrying it beyond their jurisdiction, which the legislature certainly did not exclude from the jurisdiction given in general *420 terms. ' For it was not an injury done on. personal property, but its destruction; that could not be the sense in which the legislature used the term, for the act gives the value of the personal thing claimed. We have seen that every entry is a trespass, and an injury; entering a close does not import an actual injury; the owner sustains no loss: here it is in trespass quare clausum fregit. ■ It is always alleged, that the trespasser trode down his grass on his close there growing; and by allthe provisions of this act the legislature contemplated a case of trivial injury,, by providing that if the damages found did not exceed one dollar, the plaintiff shall recover no more costs than damages. A trespass might be involuntary, — in which case, where no actual loss was sustained, only nominal damages would be given. From the sum of one hundred dollars down to the .lowest possible coin, the justices have jurisdiction for trespasses committed on the land of another, in all cases except where the title of the land comes in question. When I speak of trespass, I mean the action of trespass vi et armis, where the injury is immediate, and not an action of trespass on the case; where it is consequential as a nuisance. I am clearly of opinion, the justice had jurisdiction.'
- Judgment reversed, and a venire facias de novo awardee],